UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

RUFUS ROBINSON,

Defendant.
_____/

Case No. 09-20091

HONORABLE ARTHUR J. TARNOW
SENIOR UNITED STATES DISTRICT
JUDGE

**OPINION INCORPORATING AND EXPANDING ON REASONS FOR RESENTENCING GIVEN ON THE RECORD**

I. Background

On March 3, 2009, the United States filed an information charging Defendant Rufus Robinson with a single count of possession of child pornography in violation of title 18 U.S.C. § 2552A(a)(5). On March 18, 2009, Mr. Robinson pled guilty to this charge without a plea agreement.

On June 17, 2009, this Court held a sentencing hearing for Mr. Robinson. The Court found that Mr. Robinson had a base offense-level of eighteen, adding thirteen levels due to certain aggravating factors, and subtracting three levels because of Mr. Robinson's acceptance of responsibility. This calculation resulted in an offense level of twenty-eight. Because Mr. Robinson had no criminal history,

1

EXHIBIT A

the Court placed him in a Criminal History Category of 1, providing Mr. Robinson a Sentencing Guideline range of 78 to 97 months. After consideration of Mr. Robinson's offense, lack of criminal history, voluntary enrollment in treatment, and a psychological report finding that Mr. Robinson was not a pedophile, the Court sentenced Mr. Robinson to one day in custody and five years of supervised release, including mental health treatment as deemed necessary by Mr. Robinson's probation officer.

On July 27, 2009, the Government appealed this sentence. The Sixth Circuit Court found the sentence procedurally reasonable and substantively unreasonable, and reversed the sentence and remanded the case for the resentencing of Mr. Robinson. The Sixth Circuit Court found that while this Court's factual findings were not clearly erroneous, the factors relied upon by this Court and articulated on the record did not justify its variance from the sentencing guidelines. Specifically, the appellate court held that this Court did not sufficiently discuss and consider the seriousness of the offense, the need for deterrence, and the creation of sentence disparities.

On July 26, 2012, Mr. Robinson petitioned to the Supreme Court for a review the Sixth Circuit Court's ruling. On January 14, 2013, the Supreme Court denied the petition.

This Court acknowledges the inadequacy of the reasons given on the record during Mr. Robinson's initial sentencing hearing in June 2009.

This Court held a hearing on August 22, 2013. For the reasons stated on the record during this second hearing and for the reasons expanding on the record set forth below, this Court imposes a sentence of one day in custody and increases the term of supervised release from five years to ten years, which includes all standard conditions, all necessary mental health treatment, and regular lie detector tests. These conditions were described on the record and are further detailed in the Amended Judgment [52] entered on August 28, 2013. The one-day sentence imposed by this Court is reasonable, and is supported by consideration of the totality of all relevant factors under title 18 U.S.C. § 3553(a), including Mr. Robinson's positive post-conviction rehabilitation.

## II. Overview

At various stages of a criminal prosecution, Congress, law enforcement, the Prosecution, and this Court exercise broad discretion over the outcome of the prosecution. At the outset, Congress defined the scope of a crime. In this case, Mr. Robinson was charged and convicted under title 18 U.S.C. § 2552A, in which Congress delineated seven separate offenses requiring varying degrees of culpability. It then defined separate minimum and maximum punishments for these

offenses, showing that Congress recognized that the different offenses are considered more or less serious. For five of the offenses listed under § 2552A, Congress mandated that a convicted person must be imprisoned for not less than five years. For another offense, Congress established a punishment of imprisonment for not more than fifteen years. Mr. Robinson was charged under § 2552A(5)(a), for which Congress mandated imprisonment for not more than ten years, with no mandatory minimum sentence. Again, based on the various offense-levels and their respective punishments, Congress clearly recognized that these crimes are graduated in terms of seriousness, culpability, and necessary punishment.

Within the bounds created by Congress, law enforcement exercises its discretion in its investigation of particular criminal behavior and the arrest of specific individuals. The Prosecutor also exercises its discretion in the selection of the offense or offenses charged, or whether to charge an individual with a crime at all. The Prosecutor determines how culpable it believes this individual is, whether it will offer a plea bargain, and if so, on what terms.

Following the acceptance of a guilty plea or a jury conviction, the Court then excises all available discretion in sentencing. The Supreme Court has clearly established that the Sentencing Guidelines are not mandatory, rather advisory.

Though a sentencing court must consider the Guidelines' ranges, the court may "tailor the sentence in light of other statutory concerns." *United States v. Booker*, 543 U.S. 220, 245-46 (U.S. 2005). The sentencing court's discretion is governed by the 18 U.S.C. § 3553(a) factors. *See id.* As such, the Guidelines "serve as one factor among several courts must consider in determining an appropriate sentence." *Kimbrough v. Unites States*, 552 U.S. 85, 90 (U.S. 2007). Specifically, the sentencing judge must make an "individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall v. United States*, 552 U.S. 38, 50 (U.S. 2007). The Sentencing Guidelines mandate that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. The appellate court may review the discretion of the sentencing court, ensuring that discretion has not been abused and that the sentence imposed is reasonable. *See Pepper v. United States*, 131 S. Ct. 1229, 1240-41 (U.S. 2011). However, the Sixth Circuit Court has unambiguously held that the "appellate courts must respect the role of district courts and stop substituting their judgment

Case 2:14-cr-04067-BCW Document 39-1 Filed 08/02/16 Page 5 of 15

for that of those courts on the front line." *United States v. Phinazee*, 515 F.3d 511, 521 (6th Cir. 2008).

When a defendant's sentence has been set aside on appeal, the Supreme Court has explicitly held that the sentencing court "may consider evidence of the defendant's postsentencing rehabilitation and that such evidence may, in appropriate cases, support a downward variance." *Pepper*, 131 S. Ct. at 1236; *see also United States v. Censke*, 2013 U.S. App. LEXIS 16888, at *3 (6th Cir. 2013). The Supreme Court supports the inclusion of this postconviction evidence based on the "'uniform and constant'" notion that the sentencing judge should "'consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.'" *Id.* at 1239-40 (quoting *Koon v. United States*, 518 U.S. 81, 113 (U.S. 1996)). It also notes that "[u]nderlying this tradition is the principle that 'the punishment should fit the offender and not merely the crime.' *Pepper*, 131 S. Ct. at 1240 (quoting *Williams v. New York*, 337 U.S. 241, 247 (U.S. 1949)). Here, the Supreme Court emphasizes that during resentencing, the sentencing court's consideration of post-conviction rehabilitation is not only permitted, but consistent with the "federal judicial tradition." *Pepper*, 131 S. Ct. at 1239.

6

Perhaps most important in this case, the Supreme Court specifically noted that "evidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors," including deterrence, community safety, and treatment. *Id.* at 1242 (citations omitted). "Postsentencing rehabilitation may also critically inform a sentencing judge's overarching duty under § 3553(a) to 'impose a sentence sufficient, but not greater than necessary' to comply with the sentencing purposes set forth in § 3553(a)(2)." *Id.* Therefore, controlling case law clearly directs this Court to give substantial weight to Mr. Robinson's postconviction rehabilitation in the consideration of the § 3553(a) factors and the imposition of a sentence.

In this case, Mr. Robinson's post-conviction rehabilitation and treatment has led him to a relatively stable lifestyle. Because of the outstanding and persistent efforts of the Probation Department of the Eastern District of Michigan, Mr. Robinson has been compliant with all conditions of his supervision. Mr. Robinson has also been able to avoid reverting to criminal behavior.

At the time of his arrest, Mr. Robinson suffered from severe mental health problems, including suicidal ideation, and had no access to therapeutic treatment. Since that time, Mr. Robinson has made positive progress through consistent treatment and supervision. Mr. Robinson has been diagnosed with Dysthymic

Disorder, and he is currently under regular psychiatric care. He is meeting with a psychiatrist monthly and also has a case manager assigned to him. Mr. Robinson is in compliance with his treatment and medication regimens. Mr. Robinson's progress reports are positive, and show that he is responsive to his treatment routine. Currently, Mr. Robinson has a stable residence, is in a committed relationship, and receives disability benefits, which he uses to support himself. He no longer reports plans of suicide. Mr. Robinson is current with the Michigan State Sex Offender Registry. Again, Mr. Robinson has not recidivated, as shown by four negative polygraph tests in August 2011, March 2012, November 2012, and most recently, in June 2013.

Mr. Robinson has made enormous progress in spite of the stressors, or triggers, created by his arrest and conviction. Mr. Robinson made two suicide attempts in 2011. Photographs of Mr. Robinson in 2008, 2009, and 2013, included within this opinion below, show a clear improvement in his general well being and physical appearance.



IMAGE: image at pre-defined width
IMAGE DATE: 06/13/2008



IMAGE: image at pre-defined width
IMAGE DATE: 03/18/2009



IMAGE: image at pre-defined width
IMAGE DATE: 08/02/2013

Therefore, while Mr. Robinson has certainly struggled in the four years since his conviction, he has now found stability. Because of his regular treatment program and structured setting, Mr. Robinson has made great strides in managing his mental health and getting his life under control.

Without consistent and constant treatment, Mr. Robinson will surely lose this stability and control, as was the case prior to his arrest. Removing Mr. Robinson from his current structure, even for a short term of imprisonment, will be highly disruptive to his life-saving treatment. Moreover, the Bureau of Prisons (BOP) and its facilities may not be prepared to continue Mr. Robinson's treatment.

Placing Mr. Robinson in a facility without proper supervision and with high-risk offenders may place him in a dangerous situation, increasing his exposure to his stressors. Should he survive a prison term, such stressors may make Mr. Robinson more of a public safety concern. As such, it is in his best interest as well as the in the best interest of the larger community, to maintain Mr. Robinson's treatment, and keep him under his current supervision.

The Supreme Court has held that section 3582(a) of the Sentencing Reform Act (SRA) "precludes sentencing courts from imposing or lengthening a prison term to promote an offender's rehabilitation," because the Act specifically mandates that "'imprisonment is not an appropriate means of promoting correction

and rehabilitation.'" *Tapia v. United States*, 131 S. Ct. 2382, 2391 (U.S. 2011)(quoting 18 U.S.C. § 3582(a)). Therefore, increasing Mr. Robinson's custodial sentence cannot and will not improve or even maintain his rehabilitative efforts, and the lengthening of his sentence will only diminish any rehabilitative goals. As Attorney General Eric Holder noted during his August 12, 2013 remarks to the American Bar Association, "[i]t's clear [] that too many Americans go to too many prisons for far too long, and for no truly good law enforcement reason." While confinement has its place in promoting punishment and deterrence, it should not be used when it would most likely lead to further harm to the community and to the defendant.

### III. Application

The Sixth Circuit Court reversed this Court's original sentence, holding that this Court failed to consider three of the § 3553(a) factors: seriousness of the offense, deterrence, and the need to avoid unwarranted sentencing disparities.

As this Court hoped to make clear during the initial sentencing, Mr. Robinson's crime is very serious, and in its imposition of a sentence, this Court does not aim to detract from its seriousness. However, the Court also considers that through its discretion, Congress defined a graduated series of crimes, and in its own discretion the Prosecutor charged Mr. Robinson with a crime that does not

have a statutory mandatory minimum punishment. Therefore, this Court uses its discretion to impose a sentence within the bounds set by Congress and the Prosecution.

The absence of a lengthy term of confinement does not diminish the seriousness of the offense. This is especially true when this factor is weighed with the other § 3553(a) factors. Specifically, the sentence imposed, including his treatment, works to deter Mr. Robinson from any future crime, protects the public from this potential criminal behavior, and best facilitates effective treatment for Mr. Robinson. In fact, while under supervision for more than four years, Mr. Robinson has not taken part in any further criminal behavior. The deterrent effect of supervision and treatment is in part what makes this an extraordinary case, and what justifies an extraordinary variance.

Moreover, Mr. Robinson's supervised release, including the requirement to register as a sex offender with the state of Michigan, should not be taken lightly. This supervision and registration has a multitude of nearly permanent collateral consequences, particularly in regard to housing and employment limitations. These restrictions surely have a punitive and deterrent effect.

Finally, this Court also shares the Sixth Circuit's concern for disparate sentences. However, it finds that the sentence in this case is aligned with similarly

12

situated cases before this Court and in the Eastern District of Michigan. For example, Nicolas Dubin was also charged and pled guilty under 18 U.S.C. § 2552A(a)(5). *United States v. Dubin*, No. 12-20828 (M.I.E.D. Jan. 24, 2013)(plea agreement). During Mr. Robinson's resentencing hearing, Prosecutor Mulcahy acknowledged that the Government, within its discretion, charged Mr. Dubin and Mr. Robinson with the same level of offense. Mr. Mulcahy stated:

> There's a series of discretions here. And part of the discretion of our office–and we have made this time and time again in child pornography case. As detestable as child pornography is, we recognize that individual Defendants differ. That's an obvious fact of life. Because of that, some Defendants are required to plead guilty to the mandatory minimum on the receipt charge. Others are allowed to plead guilty to possession charges that carry a floor with it; a floor meaning the Defendant must be sentenced to X amount of time imprisonment. If not, the Government will put the lid on the receipt charge. Or, some Defendants like Mr. Dubin or Mr. Robinson are allowed to plead guilty and part of the Rule 11 Agreement calls for no floor and gives the Court the discretion to sentence to any term of imprisonment or otherwise.

Tr. of Resentencing, at *20-21.

Mr. Dubin is diagnosed with Asperger's Syndrome, and like Mr. Robinson, suffered from depression. Mr. Dubin's sentence guideline range was more substantial, ranging from 97 to 121 months imprisonment. *Dubin*, No. 12-20828 (M.I.E.D. Jan. 24, 2013)(plea agreement). Consistent with Mr. Dubin's plea agreement, this Court sentenced Mr. Dubin to one-day of confinement and five

13

years of supervised release. *United States v. Dubin*, No. 12-20828 (M.I.E.D. June 6, 2013)(Judgment). This sentence was not appealed.

During Mr. Robinson's resentencing hearing, the Court addressed three additional examples of cases in which the sentence imposed was not appealed:

> The Court: I'm looking at noncustodial child pornography cases from the Eastern District of Michigan. And I'm not going to mention the other judges. I'll just mention the times I've done it. Obviously, this is the–well, now the second most recent.
> I did it in a case where the guidelines were 100 to 135 months in Maruska, M-A-R-U-S-K-A. And these are all under the same guidelines section, which is 2G2.2.
> And you know what the Court of Appeals said in that case?
>
> Mr. Mulcahy: I don't believe that case was appealed, Your Honor.
>
> The Court: That's exactly right.
> Let's see what my next point is.
> Well, I guess–oh, okay. I'm missing a couple. One was a guideline range of 41 to 51 months. I didn't give one day. I gave five years probation. And that's Mr. Ashcraft.
> Do you know what the Court of Appeals decision in that case was?
>
> Mr. Mulcahy: I know that that case was not appealed, Your Honor.
>
> The Court: Okay. And nor were either of those cases stipulated to by your office. Is that correct?
>
> Mr. Mulcahy: That's correct.
>
> The Court: Okay. I have Ordakowski, O-R-D-A-K-O-W-S-K-I, whose guideline range was 51 to 63 months. Five years probation. Appealed or not appealed?

Mr. Mulcahy: It was not appealed, Your Honor.

Tr. of Resentencing, at *28-29.

These four examples represent just a portion of the cases in this District in which a similar sentence was imposed and then not appealed. As such, the sentence imposed in this case does not present a concern of disparate sentencing and is instead consistent with the sentences of similarly situated defendants.

## IV. Conclusion

For the reasons stated above and for the reasons stated on the record during Mr. Robinson's resentencing hearing, this Court imposes a sentence of one day in custody and increases the sentence of supervised release from five years to ten years, including all standard conditions, all necessary mental health treatment, and regular lie detector tests.

s/Arthur J. Tarnow
ARTHUR J. TARNOW
SENIOR UNITED STATES DISTRICT JUDGE

Dated: September 19, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 19, 2013, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Assistant